Good morning, your honors. May it please the court. My name is Michael Seaveen, and I'm representing Michael Daugherty and Daugherty Lincoln Mercury Incorporated. Let me ask you a question that's bothering me about this. Yes, sir. There are some difficult and interesting questions in this case about collateral estoppel. And there are some difficult and interesting questions in this case about the statute of limitations. It may be that some claims get passed. It's a little hard to say exactly what the claims are. But let's assume for purposes of discussion that some claims survive collateral estoppel, survive statute of limitations. Then you get to summary judgment. Under Celotex, Matsushita, and Anderson v. Liberty Lobby, your side has the burden of proof on each claim. All the other side has to do is point. And then you have to produce evidence cognizable under Rule 56C and 56E to show that you have a genuine issue of fact as to those claims. The pleadings are not sufficient to establish a genuine issue of fact. If I understood what the judge said right, you didn't submit any evidence whatsoever that was cognizable under Rule 56C and 56E. Am I correct in my recollection? I believe the judge did say something along those lines. But there was evidence submitted on the issues. What are the exhibits, and what are they? For example, there was a substantial amount of administrative law testimony from the New Motor Vehicle Board proceeding. I'm asking something really specific to help me. What I want is there's an opposition to summary judgment. There's stuff that's stapled to it. We even have a case that says it has to be filed with the opposition to summary judgment. The judge doesn't have to boot him around in the whole file. And I want to know where to look in the excerpts of record to see what cognizable evidence was submitted in opposition to the motion for summary judgment. Okay. Your Honor, after I reserve, can I find that in the record for you? Okay. But there was, and actually in the motions for summary judgment and the first motion for judgment and the pleadings and the motion for summary judgment, there was a substantial amount of testimony. I don't think you heard me on this. We had a case where there was nothing submitted, no cognizable evidence submitted in opposition to the motion for summary judgment. There was cognizable evidence that would have prevented summary judgment had it been submitted in opposition. It was submitted in response to some other motion. And we held that the judge did not have to look at it because it was too burdensome to require a court to root through the entire file in order to find what might establish a genuine issue. I do understand. The opposition that I'm interested in. I will find that when I reserve time. All right. Well, I just want to follow up on what Judge Kleinfeld said. I didn't see that you submitted any declarations, depositions, or any other types of admissible evidence that you cited only to unverified pleadings. And that was my review. Is that correct? No, that is not correct. We did cite to testimony, previous testimony, and again, I'll get that when I reserve time. All right. I'll have to dig through and find that particular portion of it. And was that testimony attached to the opposition? I believe it was. I'm going to have to find it and refer to that in my reserve time. I'm fairly certain it was attached to that. Now, with respect to the issues of collateral estoppel and the statute of limitations issue, I think on the collateral estoppel issue it's important to understand, and I'm fairly certain you do, the nature of the proceedings before the New Motor Vehicle Board, the administrative agency. There were actually two actions filed. There was a protest filed under the provisions of Section 3060 of the Vehicle Code, which was filed in response to Lincoln Mercury giving a notice of intent to terminate the franchise relationship, which was based upon a cessation of the business. And in addition to that protest, there was a petition filed under a separate code, Section 3050C of the Vehicle Code. The protest and the petition were consolidated for hearing purposes before the board, and shortly before the hearing, the evidentiary hearing before the board came up on calendar, the greenlining versus public utility commission case was decided. And in the greenlining case, the administrative law judge of the board looked at that case and raised the issue about whether the New Motor Vehicle Board has jurisdiction to hear the allegations of the petition, the second action filed, and determined not to hear those, sever the protest and petition hearing, and stayed the petition hearing and went to hearing solely on the protest. The protest had very, very limited elements to it. It's whether there's good cause established for the termination of the franchise relationship between Lincoln Mercury and Doherty Lincoln Mercury Incorporated. It's also important to note that Ford Motor Credit was not a party to that, nor could it be. The New Motor Vehicle Board is a board of limited jurisdiction that only has jurisdiction over licensed dealers and manufacturers, not the finance arm, in this case Ford Motor Credit. So when the administrative law judge rendered his decision, which this whole issue of collateral estoppel applies to, the decision was really whether good cause existed for termination. All of the allegations about the conduct of Ford Motor Company raised in the petition were never litigated before the board. Those were the issues that were litigated in the, well, attempted to be litigated in the federal action that was commenced by Ford Motor Credit. Hold on. I'm still distracted by something here, and it's interfering with my concentration. I looked up your opposition to motion for summary judgment at excerpts of record 232, and then there's a memorandum of points and authorities in opposition that excerpts of record 242. And as far as I can see, nothing is attached. Is that the whole deal? Is that what the judge had in front of him? Your Honor, again, I will look at this when I reserve time. I'm fairly certain there were additional pleadings. Whether they're attached to this excerpt of record or not, I don't know. What we were concerned about is when you're a district judge, you've got often a big file. Often the file in a case is a couple of drawers. And we thought, oh, well, we can have some law clerk root around in this gigantic file or these drawers of files, and you can always find something, but it's just not reasonable to impose that burden on a district judge. So if you have evidence, attach it so we can see it. I understand that, Your Honor. And I'm looking here, and it looks like there's nothing attached. Is this partial, or are these the whole oppositions? It's your excerpts that I'm looking at. I believe this is partial. I don't know that it's in this binder here, or if it is, it's not in the same spot. But, again, I will look for that. So I know that there were excerpts from the record. Yeah, I looked at it, and I thought, hmm, no evidence. So I have nothing to look at here to see if there's a genuine issue. So I don't have to think about collateral estoppel and statute of limitations. No evidence, no problem. Can I address the statute of limitations issue, though? And, again, I will look for that portion of that record. With respect to the statute of limitations issue, as I was alluding to the protest and petition proceeding, the petition was filed with the New Motor Vehicle Board raising the issues that we had raised concerning the conduct of Lincoln Mercury, not about the termination aspect of whether good cause exists for the termination of the franchise. We cited in our brief the Elkins v. Derby case that says that when an injured party or that the tolling of the statute of limitations is applicable, where an injured party has several legal remedies and reasonably in good faith pursues one. And that's what we did. We filed the petition before the New Motor Vehicle Board, and it wasn't until shortly before that petition came to evidentiary hearing that the Green Line case was decided, which cast doubt on whether the New Motor Vehicle Board had jurisdiction. It didn't dismiss the petition. It severed the proceedings, the protest and petition, and simply stayed that petition until such time as the action was filed in the federal court in response to the claim filed by Ford Motor Credit against Mike Doherty on the continuing guarantees on the flooring line and credit line. Now, with respect to the statute of limitations against Ford Motor Credit, these claims were raised in response to the lawsuit filed by Ford Motor Credit against Mike Doherty on the guarantees. They were affirmative claims raised. They weren't claims that we had sought adjudicated before the board because we couldn't, the board didn't have jurisdiction, or in state court. They were affirmative claims filed against Ford Motor Credit. So clearly there isn't a statute of limitations issue applicable to the Ford Motor Credit. And, again, with respect to Lincoln Mercury Ford Motor Company, the case that we cited, the Elkins v. Derby case, stands for the proposition that the statute of limitations was told during the period of time that those claims were pending before the New Motor Vehicle Board. So I'll reserve my ten minutes, and I'll look through the record and see what I can find. Counsel? What's the judge's finding? Yeah, that's what I saw, and I checked it. May it please the court. Cranston Williams for Appellee Ford Motor Company, Lincoln Mercury Division. To address a comment that the court made earlier with respect to the opposition to the motion for summary judgment, that is the extent of the opposition. There was not anything further attached to the opposition. And the district court so found? Yes, it did. In fact, at the hearing of the motion, the judge commented that, in fact, there was no evidence in opposition to the motion. There was no argument made at that time, no evidence cited at that time in response to the judge's comment. So that is the extent of the record regarding. That case I was referring to, I have a vague recollection that it was named Carmen, but that could have been the first name or the last name of the party. Do you happen to recall it? The one that says it has to be attached to the opposition so the judge doesn't have to root around through the whole file. I did find some cases. That case does not stand out. But I know that there is case law in the Ninth Circuit that requires a party opposing a motion for summary judgment to attach the evidence in opposition to this motion to summary judgment as part of the opposition and not to require the court to go searching through the record. I only have one other point with respect to that issue, Your Honor, and that is that, in fact, the appellant has not raised that as a ground for the appeal. In fact, the only basis that the appellant is challenging the court's ruling on the summary judgment motion on the grounds of statute of limitations is that, in fact, equitable tolling applies. So to the extent that there are any arguments that the judge did not consider other evidence that was in the record, those arguments were not raised in the opening or reply briefs and they have been waived. And I have nothing further, Your Honor. So you're saying even if the judge was wrong and even if there is something in the record in the nature of evidence, still that has not been briefed to us? Right. He's waived that argument because he has not opposed, I mean, he has not challenged the lower court's ruling or the district court's ruling on that ground. The only basis that appellant has challenged the district court's ruling is on the grounds that equitable tolling applies and that, in fact, makes the statute of limitations or gives an exception to the statute of limitations. And I have nothing further unless. Fine. Thank you. Thank you. Mr. Martin. Good morning. If it pleases the Court, I'm David Pinch, appearing on behalf of Ford Motor Credit Company. I don't need, though, that I need to be much longer than Mr. Cranston, Mr. Williams was. I think as far as any evidence, the record is clear there was none. Even if you look at Mr. Stevens' brief for his appeal, his entire statement of facts refers only to his unverified counterclaim that he filed in the action. And that's what the judge referred to in the summary judgment motion was that all you've referred to me in your opposition is your unverified complaint or counterclaim, and that's not evidence before the court. Accordingly, since Ford Motor Credit Company has put on a prima facie case, there's nothing if I predict it I'm compelled to grant the motion. As far as the statute of limitations is concerned, it would not have been tolled against Ford Credit, even if that issue were raised. It would be tolled during the administrative proceeding for some claims, wouldn't it? I don't think it would have been as far as Ford Motor Credit Company because we weren't a party to that action. If he had claims against us, he needed to raise them within that same period of time. We weren't tolled because we're not a party to administrative law action. As far as any offset is concerned, he could only raise that as an affirmative defense in his answer, which he chose not to do. He did attempt to raise some of these as claims in his counterclaim, but that can't be done because that's affirmative relief and that's barred by the statute of limitations. So it's not raised as an affirmative defense, so it can't be an offset, can't be a claim because it's barred by the statute of limitations. And I think that's all I have, unless the Court has questions for me. Thank you, Counsel. Thank you, Your Honor. Given the short nature of the arguments, I have looked at these. I don't see in the excerpt of the record that we submitted that the evidence was attached to that. It is very possible that it wasn't attached to that. However, there was a lot of arguments raised as far as the evidence submitted by Ford Motor Company and Ford Motor Credit. And those arguments, and I can refer to them, it's in Lincoln Mercury's excerpts of records starting at page number 494. They show us how a genuine issue of fact is established by the cognizable evidence that Ford submitted. Mr. Daugherty, this is part of the administrative law hearing, and Mr. Daugherty, the owner of the dealership, testified. I thought you were talking about the motion for summary judgment. We are, Your Honor. So I'm looking in your excerpts here, and there's a motion for summary judgment by Ford, right? Ford Motor Credit. And what you're saying is one of the attachments to that makes out your genuine issue? The testimony from Mr. Daugherty in that, yes, Your Honor. Where is it? Well, it would be in volume two of Ford Motor Company's excerpts of records starting on page number 0494. And this is questioning from the administration. Is Daugherty testifying here? It is, Your Honor. And the page is going through. Okay, where's the genuine issue here? Well, the questioning from the judge is whether Mr. Daugherty was aware that these units were being delivered, that Ford Motor Company had increased the flooring line from $2 million to $7.6 million, and it just goes through and talks about whether he was aware, whether the management was, for example, on page 495, line 22, any management involved in the process. Again, they're talking about the process of the delivery of these units to the lot across the street, and Mr. Daugherty answers no. What's the significance of that? Well, Mr. Daugherty was unaware of the fact that Ford Motor Credit had unilaterally increased the $2 million flooring line, which he had contractually agreed with Ford Motor Company. Wait, does this mean Daugherty is saying, I don't know what cars are on my lot? Mr. Daugherty, well, the cars are delivered to a lot across the street. Yes, he was saying that he wasn't. They're in one of his lots, right? Daugherty has a lot on his side of the street and on the other side of the street. He's got a storage lot on the other side of the street, correct. And he's saying cars go into that lot and I don't know it? Yes. That's what this means? That's part of what this means. And he testified he was unaware of the fact that the contract that he had agreed with, with Ford Motor Credit for a $2 million flooring line, had been increased without his knowledge unilaterally by Ford Motor Credit to roughly $7.6 million, and those units had been delivered from Lincoln Mercury Floor on the Ford Motor Credit flooring line and delivered to the lot across the street from his dealership. How does that happen? I mean, there's trucks that carry cars, big trucks. The guy's a car dealer. I don't understand. Mr. Daugherty at the same location had Lincoln Mercury in one building. He had Chevrolet, and it's a fairly large Chevrolet dealership, and there are a lot of units in inventory there. And he was unaware of that. He knew what the Chevy ones were because they were sitting right in front of the building. The side lot over there where the Lincoln Mercury units were delivered, his testimony was that he was unaware that these units were delivered, especially to the extent that it reached a $7.6 million. Well, he doesn't have any employee who keeps track of what comes in. The lot boy over there that did it. But if you read the testimony here, it's whether any management was involved in it, whether he was involved in it, whether he knew what was going on, and his testimony was pretty clear that he did not. But the question is whether he should have. Somebody delivers those. That was never litigated, though, because we never got to that point with Ford Motor Credit. He says there's a lot of activity, and a truck is sizable, and, you know, so word spreads fast. It's not like midnight dumping. Some of them came in after hours, I believe. I think that's not in this part. There's another part of this transcript that talks about when those things were delivered, and a lot of them came in after hours when there was no management there. And, again, they have a lot boy over there that watches the lot, and cars were delivered over the lot, but none of the managers were involved. Mr. Doherty wasn't involved in it. And it wasn't until sometime later that he realized that there were $7.6 million of cars on that lot when, in fact, his flooring line with Ford Motor Credit had been, to his knowledge, only $2 million. So these were – and, again, these were – He doesn't say he doesn't see them. He says he wouldn't know if he'd ordered the cars on the truck or not unless he checked. Correct. But if you go back even further in the discussion, there's about 10 pages worth in there. But with respect to the issue of the statute of limitations against Ford Motor Credit, these were raised as claims against Ford Motor Credit in response to the lawsuit that Ford Motor Credit filed against Mr. Doherty personally for the guarantees, and in the cross-complaint that we filed against Mr. Doherty and Doherty-Lincoln-Mercury, Inc., raised against Lincoln-Mercury Division of Ford Motor Company. So they were claims that were raised in response, in the answer, to the complaint filed by Ford Motor Credit. Is it flat? I'm sorry? Is this dealership flat? I noticed it's 12 acres, and I know what 12 acres looks like from the area where I live. But if there's a hill in between you and part of the 12 acres, you can't see stuff big enough for a hill to be in between. But if it's flat? No, it's flat, but the Chevy building sits pretty much on the corner. It's set back a little bit. It's on the corner of Fulton and El Camino in Sacramento. The Chevy building is a fairly large building. Standing in the Chevy building, you can't see the other lot across the street. The other lot actually is not on the corner. It sits behind an auto parts store, and it's essentially a storage lot. The only way you can see that is to go outside the building. Well, your case is the reason that we can show the four elements of fraud, including reasonable reliance, are that they were sneaking cars into our lot. Sneaking, dumping, however you want to call it. But, yes, that would be the gist of our case against Ford Motor Credit. And that and increasing the flooring line to the huge extent it had without our knowledge. But in order to see that lot, you actually have to visit it. What I was really looking for for your case, I thought a possible plaintiff's case here. Ford wants to build up its profits, so it shoves cars down dealers' throats, and the dealers protest, say, I don't want these cars, they shouldn't get these cars. Ford shoves them down their throat anyway so that they can have a good quarter. But I didn't see the evidence for it. They're making it up. No, I understand that. The evidence that Mr. Daugherty testified to in the administrative hearing is that he was unaware of the increase in flooring line, that, in fact, there were meetings between the Ford Motor Company and Ford Motor Credit people because this credit line had been suspended, and there was no credit line. It hit the $2 million mark, and they weren't going to – Shoving cars down his throat that they know he can't pay for. Exactly. Ford Motor Company met with the representative. Why would who do that? Ford Motor Company? Yeah, shove cars down his throat. Because they sell them. They sell them on wholesale, and they make money on those. And that goes on in the car business all the time. It's dumping cars. If it's a slow quarter for the manufacturers, they'll try to dump cars. They'll move them off the lot because they get paid by the flooring company as soon as those cars hit the lot. So that's the practical reality. That's why it happens. But in this case, there was ample testimony in the administrative hearing process, and, in fact, there were meetings between the Ford Motor Company and Ford Motor Credit people that Mr. Daugherty wasn't involved in. He didn't know anything about it. He didn't know his flooring line had been increased. You lost at the administrative hearing. The only issue at the administrative hearing was whether there was good cause for termination of the franchise in consideration of those good cause factors. His dealership was closed. For the New Motor Vehicle Board to have determined that there wasn't good cause for termination would have been a pretty difficult thing to do. The dealership had been closed. He ceased business. He ceased sales business first and then service business about a month later. But the only issue before that board was should that franchise relationship be terminated. None of the claims against Ford Motor Credit or Lincoln Mercury, the ones raised in the petition, were adjudicated by that board because, as I said, the board doesn't have jurisdiction over Ford Motor Credit, and the petition claims had been stayed because of the Green Line case. And I think I have used my time. You've got 55 seconds and one more question. Certainly. Where is the reference in your opposition to summary judgment that tells me to read that testimony that we just discussed together? I keep seeing this stuff. Whenever I skim through it, it says a Fourth Amendment answer counterclaim and third-party claims on file therein. It already asserts phrases like that. I don't know. I was going to find that, but, again, their arguments were fairly brief. I don't know where it is attached to our opposition to the motion for summary judgment. Did you tell the judge to look at that stuff? We discussed those issues. This wasn't the first. The summary judgment wasn't the first go-around with the judge. We had several motions. The go-around, the summary judgment that you lost on in your appealing, did you tell the judge to look at what you just showed us to look at? I cannot honestly answer that yes or no. I don't remember. I know those issues came up in the motions for judgment on the pleadings and the demurs and the other stuff before the same judge. This judge was very familiar with this case. Thank you, Your Honor. Thank you, Your Honor. I think the arguments are over. You don't get a third reply. Ford Motor Company, unless my colleagues wish to hear more. Ford Motor Company v. Doherty is submitted. We are adjourned for today.
judges: Nelson, Kleinfeld, Hawkins